UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JONATHAN P.,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　Defendant. | :<br>:<br>:<br>:　C.A. No. 19-346MSM<br>:<br>:<br>:<br>: |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

　　This matter is before the Court on the motion of Plaintiff Jonathan P. for reversal of the decision of the Commissioner of Social Security (the "Commissioner"), denying Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under § 1631(c)(3). Plaintiff alleges that, as of June 1, 2016, when he was thirty-five, he was working part-time as a cashier at Rite-Aid because he was mentally unable to sustain full-time work. He now contends that the Administrative Law Judge ("ALJ") erred in rejecting as unpersuasive the consulting opinion of a psychologist, Dr. S. Richard Sauber, and in formulating a residual functional capacity ("RFC")[1] based on nothing more than her own lay evaluation of the limiting effects of bipolar disorder, attention deficit hyperactivity disorder ("ADHD") and obstructive sleep apnea ("OSA"). Defendant Andrew M. Saul ("Defendant") has moved for an order affirming the Commissioner's decision.

　　The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entirety of the record, I

---

[1] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

find that Plaintiff's arguments are well founded and recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be GRANTED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 17) be DENIED.

I.      **Background**

Born to professional parents (a social worker and a psychologist), Tr. 37, 341, Plaintiff's childhood mental health struggles resulted in his placement in specialized residential schools providing psychiatric treatment through the end of high school. Tr. 468. He attended college but the record does not reveal whether he completed any classes. His work history reflects further struggles in that he has cycled among an array of mostly low skill/low pay jobs such as dishwasher or cashier; for example, in 2009, he earned approximately $11,000, working for six different employers. In 2012, he began working full-time as a teaching assistant, but had to take a medical leave "for mania and after his return he never gained their trust back and his contract was not renewed." Tr. 444. Plaintiff has also faced the challenges of addiction to both alcohol and drugs; while these addictions were in remission during the period of alleged disability, the record reflects sporadic relapses. E.g., Tr. 371, 440. He lives with his parents. Tr. 34, 45. At the time of the ALJ hearing, Plaintiff was thirty-eight years old.

The record reflects that Plaintiff's attendance to procure medical treatment or medical assessment was consistently poor. Most significant is that he twice failed to appear for appointments with consulting state agency ("SA") psychologists during the administrative processing of his disability applications, leaving his application so unsupported that the file reviewing SA experts (psychologist, Dr. Jeffrey Hughes and Dr. Ryan Haggerty) both concluded that there was "insufficient evidence" to assess the severity of what they acknowledged to be at

least one severe mental impairment.² E.g., Tr. 69, 81.  At the hearing, Plaintiff testified that he failed to appear both times because of an undisclosed problem with his mail.  Tr. 42.  The record does not reflect any consideration by the ALJ whether the failure to show up for these critical scheduled examinations was the product of Plaintiff's mental disorders.  Notably, this pattern recurs in Plaintiff's failure to remain in communication with his attorneys.  See Tr. 2 (extension requested "to allow our office to reestablish contact with the claimant").

     Plaintiff was similarly inconsistent in seeking treatment.  For example, there is no mental health treatment from onset on June 1, 2016, until March 2017, when Plaintiff resumed treating at the Providence Community Health Center.  At intake with a primary care physician, Plaintiff was immediately "handed off" to a licensed social worker to connect him with a psychiatrist.  Tr. 312-19.  On an initial referral for counseling to Angell Street Psychiatry, Plaintiff failed to appear for the appointment.  Tr. 342; see also Tr. 349 (treating provider sends letter because of inability to reach Plaintiff).  Plaintiff was not linked with a psychiatrist until September 2017, when he resumed treatment with a psychiatrist he had not seen in ten years, Dr. Daniela Boerescu of Lifespan.  Tr. 365.  From September 2017 until July 2018, Plaintiff saw Dr. Boerescu seven times.  Tr. 365-446.  While her notes indicate the plan was for monthly appointments, there are gaps when Plaintiff did not come.  For example, from March until July 2018, Plaintiff failed to follow up; when he appeared on July 2, 2018, he told Dr. Boerescu that he had relapsed on alcohol several times and had been running for the United States Senate, a course of conduct his father had labeled as "manic."  Tr. 444.  Dr. Boerescu's notes indicate that Plaintiff's prior treatment was for bipolar disorder, depression, substance abuse and

---

² The Lifespan record that contained all of the psychiatric treating notes was provided on the same date that the SA file review was completed; therefore, it was not part of what the SA experts examined.  Nor had Dr. Sauber's examination yet been performed.

"concentration problems," that his history and current diagnoses included obstructive sleep apnea and that he had at least one partial hospitalization. Tr. 365-66. She noted Plaintiff's report that "he gets strangely obsessed with different things that he gets interested in to the point of causing functional impairment in other areas of his life." Tr. 365. While her first mental status examination ("MSE") was largely normal, after that, she typically noted varying abnormalities of mood, thought content and, with increasing frequency, attention/concentration. Tr. 372, 375, 433, 436, 439, 445. Over several months, Dr. Boerescu was considering, but did not actually prescribe, medication for ADHD. Tr. 440, 446.

      Three weeks before Plaintiff's ALJ hearing, just as Dr. Boerescu was leaving on vacation, Plaintiff called her twice to ask her to complete forms in connection with his disability applications. Tr. 447. Her notes reflect that she was unable to reach him. Id. At the hearing, Plaintiff testified that Dr. Boerescu told him her practice is to decline to complete such forms. Tr. 42. Plaintiff's father was able to find another psychologist, Dr. Richard Sauber, who was willing to perform a consulting evaluation and write a report with an RFC opinion in time for the hearing. See Tr. 43. And Dr. Sauber appears to be qualified, at least to the extent that his letterhead reflects that he is a "Diplomate and Board Certified in Clinical and Family Psychology," and has affiliations with Harvard, Brown and Columbia University, as well as the University of Pennsylvania. Tr. 468.

      Dr. Sauber performed his clinical assessment of Plaintiff over two days for a total of four hours and also performed a file review, although the report is not specific as to what portions of the file he saw. Tr. 648. Dr. Sauber concluded that Plaintiff suffered from comorbidities of bipolar disorder and ADHD, for which prognosis is "quite poor," and that these impairments cause debilitating symptoms that are either seriously limiting or result in the complete inability to

4

meet competitive work standards, including the inability to sustain any changes in routine, to maintain attention for two-hour segments or to set realistic goals.  Tr. 469-70.  As a result, Dr. Sauber opined that Plaintiff was limited to unskilled work for no more than sixteen to twenty hours per week.  Tr. 471.

## II.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148,

153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).

## III.   Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.[3] The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.   The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or

---

[3] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, I cite to one set of regulations only.

6

combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

**B.    Opinion Evidence**

For applications like this one, filed on or after March 27, 2017, the SSA has fundamentally changed how adjudicators assess opinion evidence. The familiar and longstanding requirements – that adjudicators must assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. 20 C.F.R. § 404.1520c(a). Instead, adjudicators "will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Id. Rather, an ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 381, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859. In other words, "[a] medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Id. at 5854.

If the record contains "two or more medical opinions . . . about the same issue [that] are both equally well-supported . . . and consistent with the record," the ALJ's decision must articulate how the other persuasiveness factors were considered. 20 C.F.R. §§ 404.1520c(b)(3). The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1520b. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the

statutory definition of disability. 20 C.F.R. § 404.1520b(c)(3). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion. See 20 C.F.R. §§ 404.1545-1546; see Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793-94 (1st Cir. 1987) (per curiam). The resolution of such conflicts in the evidence and the determination of disability is for the Commissioner. See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

**IV.     Analysis**

In this case, the SA file-reviewing experts examined the incomplete record presented to them; lacking records reflecting any examination by a psychologist (including the report and RFC opinion of Dr. Sauber) and lacking the Boerescu treating notes, they concluded that Plaintiff had at least one "severe" mental impairment but that, otherwise, they found that the evidence was insufficient to support any opinion (one way or the other) as to Plaintiff's RFC. The ALJ's treatment of these non-opinions is difficult to parse. Her analysis begins with the finding that they are "persuasive." Tr. 22. She then pivoted to find "unpersuasive" the SA experts' conclusion that the medical evidence was insufficient because she was able to make her own findings based on the Boerescu treating notes and Plaintiff's testimony. Tr. 23. Based on her lay assessment, which appears primarily to be based on Plaintiff's statements regarding his activities,[4] the ALJ found that Plaintiff retained the capacity to work full-time, although limited to understanding, remembering and carrying out only simple tasks. Tr. 20.

---

[4] For example, the ALJ adverts to Plaintiff's ability to roll out a campaign for United States Senate as evidence that contradicts his statements regarding the inability to concentrate for extended periods. Tr. 20-21. While she is right that these are inconsistent, a medical expert might well find that the launching of a Senate campaign was a symptom of Plaintiff's impairments and not an example of his ability to function appropriately. An appropriate assessment of the medical significance of the discrepancies between Plaintiff's subjective statements and the objective evidence in this complex record is a matter for sifting by an expert on remand.

9

The ALJ's lay interpretation of Plaintiff's functional capacity was not based at all on the report and RFC opinions of Dr. Sauber; those the ALJ rejected as unpersuasive. Tr. 22. One of her primary reasons for the rejection is that Dr. Sauber was not a treating source, and therefore did not have a treating file to support his conclusions; instead, she found (incorrectly) that the Sauber report "appears to be based on claimant's subjective complaints." Tr. 22. This finding ignores the preamble to the Sauber report, which states that the opinions are based both on a file review and on "[i]nterviews and examination of patient," Tr. 468. Her finding that Dr. Sauber's opinions clash with the "other longitudinal evidence of record" is unsupported because she had no other qualified expert to interpret the other evidence of record, particularly the Boerescu treating notes, which the SA experts did not see. Tr. 22. The ALJ also misinterpreted the Sauber RFC assessment of various functional areas as "unable to meet competitive standards," instead treating them as an opinion on the ultimate determination of disability, which is reserved to the Commissioner. Id.

All of these facets of the ALJ's decision are tainted by error that require remand for further proceedings.

For starters, it is well settled that an ALJ cannot deploy lay common sense to analyze and make findings regarding a complex medical record, as the ALJ did here. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Facing a file with no SA expert opinions, which had been amplified by the addition of extensive evidence of psychiatric treatment and a new psychiatric diagnosis, the ALJ should have summoned a medical expert to assist her. 20 C.F.R. § 404.1517; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986); Carrillo Marin v. Sec'y of Health & Human Servs., 758 F.2d 14, 17 (1st Cir. 1985). Remand is required for further consideration of the overall record in light of the Boerescu treating notes, including an expert's assessment of

Plaintiff's testimony, activities (such as his campaign for the Senate) and his behavior in prosecuting the applications (such as his failures to appear for scheduled psychological examinations).

The ALJ's treatment of the Sauber opinion is also erroneous.  First, the 2017 amendments to the applicable regulations eliminated *per se* preferential weight for treating sources.  See 20 C.F.R. § 404.1520c (ALJ must consider the persuasiveness of all medical opinions in a claimant's case record).  The ALJ's approach to Dr. Sauber seems to be largely based on his non-treating status, which is directly contrary to § 404.1520c(a).  20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight . . . to any medical opinion(s)").  Further, it is simply incorrect to classify each of Dr. Sauber's individualized functional assessments as mere "statements that . . . would direct a determination in a case."[5]  Tr. 22.  To the contrary, Dr. Sauber made detailed findings on an RFC form, which he translated into the summary set out in his addendum report, Tr. 468-77; therefore, the ALJ erred in dismissing these findings as "evidence that is inherently neither valuable nor persuasive."  Tr. 22 (citing 20 C.F.R. § 404.1520b(c)).  It is equally inaccurate to find (as the ALJ did) that Dr. Sauber's reliance on his own clinical interview and examination (as well as a file review)[6] amounts to reliance on nothing more than "claimant's subjective complaints."[7]  Id.  The ALJ also completely ignored Dr.

---

[5] There is one exception: Dr. Sauber's closing statement includes the phrase, "this is a lifetime disability."  Tr. 471.  This is a matter reserved for the Commissioner.  However, what immediately follows is an appropriate medical opinion – that is, Dr. Sauber's opinion that Plaintiff's prognosis is poor in that his symptoms are not reasonably likely to improve.  Id.

[6] In his argument, the Commissioner contends that what the ALJ meant when she noted that Dr. Sauber's opinion is unpersuasive because he did not rely on treating notes, is that Dr. Sauber did not rely on any treating notes.  ECF No. 17 at 3-5.  The Commissioner emphasizes, "Dr. Sauber did not base his opinion on any records."  Id.  This argument completely overlooks Dr. Sauber's introduction to his addendum report, which indicates that he relied on a "[r]eview of medical/clinical records."  Tr. 468.

[7] The parties debate whether Dr. Sauber's statement that his opinions were based on an "examination" means that he did or did not perform a mental status examination.  Tr. 22.  It seems obvious that Dr. Sauber's examination must have been a mental status examination despite his failure to use the full phrase – it is difficult to understand what

11

Sauber's predicate exposition regarding the seriousness of Plaintiff's comorbid impairments. See Tr. 470 ("No other two mental disorders have a greater negative effect on work and activities of daily living than the combination of Attention Deficit Disorder with Bipolar Disorder."). While this is not a medical opinion on which the ALJ was required to comment, 20 C.F.R. § 404.1513(a)(2), it stands as a foundation to the Sauber opinions; its medical complexity confirms that the ALJ's interpretation of the Sauber opinion was a matter beyond her ken.

What remains is the ALJ's comparison of Dr. Sauber's RFC to her lay interpretation of the "longitudinal evidence of record." Tr. 22. For example, the ALJ relies on her own puzzling finding that Plaintiff experienced "rapid improvement with medication management." Id. In fact, what the record appears (to this lay adjudicator) to establish is that Plaintiff's medication enabled him to perform limited work, although concentration issues, periods of mania and substance relapses persisted. Tr. 444 (better with Lexapro; noting problems with concentration, potential mania episode and several alcohol relapses). At bottom, neither the ALJ nor I am qualified to make such a determination; it requires medical expertise. Remand is required to procure it.

## V.  Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be GRANTED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 17) be DENIED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure

---

kind of an "examination" might be done by a psychologist assessing the severity of mental impairments if not a mental status examination. If this question is deemed pivotal, on remand, the ALJ can and should inquire further. See Richardson, 402 U.S. at 400; Nguyen, 172 F.3d at 35-36.

to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 13, 2020